

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

April 24, 1957

Hon. Robert S. Calvert          Opinion No. WW-68
Comptroller of Public Accounts
Capitol Station                 Re: Whether or not the gas referred to
Austin, Texas                        as "free" gas received by the City
                                     of McAllen is exempt from the
                                     occupation tax provided for by
Dear Mr. Calvert:                    Article 7047b, V.C.S.

You request the opinion of this office upon the application of the occupation tax upon the business or occupation of producing gas within this State imposed by Article 7047b, Vernon's Civil Statutes, under the conditions hereinafter stated.

On February 1, 1952, Taylor Refining Company and Mayfairs Minerals, Inc., both Texas corporations, and the city of McAllen, a municipal corporation, entered into a Gas Sales Contract. In this contract they designated themselves "Companies" and "City" and we shall so refer to them in this opinion.

By the terms of the contract Companies acquired from City all the minerals under certain land owned by City for the purpose of oil, gas and mineral development. For the same purpose Companies acquired all the minerals in land owned by private parties, the total of which the contracting parties designated "McAllen General Area". The net result is that Companies acquired all the gas in place in the McAllen General Area. City agreed to cooperate and assist Companies in acquiring for mineral development the land owned by private parties within the corporate limits of City.

Paragraph II of the Gas Sales Contract, which we deem most important, is as follows:

"In consideration of the City's right hereunder to purchase gas for a nominal price, which is practically tantamount to receiving gas free of any cost to it, and in consideration of the City's unconditional right hereunder to assign this agreement or to resell to any party the gas purchased by it hereunder at a substantial monetary profit to City, City covenants and agrees to forthwith, as Lessor, execute and deliver to Companies, as Lessee, without the payment of any bonus to City, valid oil, gas and mineral leases on terms identical with those contained in lease form submitted by Companies to

Hon. Robert S. Calvert, page 2 (WW-68)

City, <u>covering all minerals owned by City under lands</u>
<u>within the 'McAllen General Area' as defined herein.</u> For
the same consideration, City covenants and agrees that
it will in good faith continuously cooperate with
Companies in assisting Companies to promptly obtain
from the respective mineral owners, owning lands
within the corporate limits of City, without the pay-
ment of any bonus, valid oil, gas and mineral leases,
on terms identical with those contained in aforesaid
lease form submitted to City, <u>covering all minerals</u>
<u>owned by such parties other than City under lands</u>
<u>within the said 'McAllen General Area.'</u> Companies
agree that they will accept all such leases tendered
and that they will within a reasonable time unitize
and pool all such leases so obtained by them insofar
as they cover lands within the said 'McAllen General
Area' so that the same will be a part of the particu-
lar gas operating and production unit covering said
area which is identified as Companies 'McAllen Field-
wide Unit.' Companies recognize that any drilling
and production operations conducted by them on leases
covering lands within the corporate limits of the
City of McAllen will be governed by valid terms of
the oil and gas ordinance of the City, either as now
existing or as may hereafter be amended." (Emphasis
supplied throughout.)

Specifically the question we must decide may be simply stated as
follows: Is City a producer, as defined by the statute, of the gas pur-
chased from Companies under the contract? If City is a producer of gas,
it must be admitted the tax is not due, this for the reason that an occu-
pation tax may not be constitutionally imposed upon City. Article VIII,
Section 1, Constitution of Texas. If, however, Companies are the pro-
ducers, the tax is valid even though City is the purchaser. Under the
contract, City does not produce one cubic foot of the gas. The produc-
tion falls entirely upon Companies and so does the tax. As said by the
Supreme Court in the case of <u>W. R. Davis, Inc. v. State</u>, 142 Tex. 637,
180 S.W.2d 429:

"The provisions of the Act in no uncertain language
levies the tax against the producer of gas and not the
purchaser thereof."

The lease and the Gas Sales Contract were executed contemporan-
eously and must therefore be construed together as one instrument. City,
as part of the consideration for executing the lease, required that Com-
panies contract to sell to City the amount of gas mentioned in the contract
on certain terms. The usual provision in an oil and gas lease is that the
lessee pay a bonus and an additional consideration or payment of a royalty

Hon. Robert S. Calvert, page 3 (WW-68)

to the lessor. But in this case the consideration is that Companies will sell to City a certain amount of gas. The contract recites that because of the agreement by Companies to sell gas to City, it would execute a lease to Companies without the payment of any cash bonus. It is therefore quite apparent that City reserves no royalty and the transaction is in effect a sale of all minerals by City to Companies. The Gas Sales Contract so states. It is clear that the gas which is delivered to City is not a delivery of gas as royalty in kind but is in truth an actual sale. The contract makes many references to the fact that Companies will sell and that City will pay, thus negativing the idea of delivery of a gas royalty in kind or a royalty reservation. The net result of the lease and the Gas Sales Contract, when considered and construed together, is that City conveyed the mineral estate to Companies in consideration of Companies' agreement to sell the specified amount of gas to City for the price specified in Section 3 of the contract which is later specifically set out in this opinion.

That City is the purchaser is wholly immaterial. State of Texas v. City of El Paso, 135 Tex. 359, 143 S.W.2d 366. This case involves the motor fuel sales tax, but it holds that it is immaterial that a City is the purchaser of the motor fuel; so it is here as to this gas. In this case the court said:

". . .In this instance we think that beyond any doubt our motor fuel tax laws tax the first actual sale of motor fuel in this State, regardless of whether or not it is sold to a city. . . ."

The only obligation imposed upon Companies by the contract is to sell to City for the consideration specified, in the amount specified and for the time specified, gas which it produces from the McAllen General Area, observing the obligation to give City priority to purchase over other purchasers of the gas. This does not render City a producer under the contract or the statute. Nor does it render it a royalty owner or interested party within the purview of the statute. The contract in no manner restricts, by reservation, carving out, or otherwise, the complete ownership by Companies over all the gas under the McAllen General Area. Of course, the whole of all the gas is depleted by sales made by Companies, but it still remains the owner of all that is left, and so it will continue under the contract as long as it is in effect.

Section 2 of Article 7047b, V.C.S., defines producer as follows:

"For the purpose of this Act 'producer' shall mean any person owning, controlling, managing, or leasing any gas well and/or any person who produces in any manner any gas by taking it from the earth or waters in this State, and shall include any person owning any royalty or other interest in any gas or its value whether produced by him, or by some other person on his behalf, either by lease, contract, or otherwise."

Royalty Owners are defined as follows:

"'Royalty owners' shall mean and include all persons owning any mineral rights under any producing leasehold within this State, other than the working interest, which working interest is that of the person having the management and operation of the well."

Companies fall squarely within the definition of a producer and royalty owner under the statute. City is exempt from the statute because not embraced within its terms, and Companies are subject to the tax because embraced within the terms of the statute and Companies have no exemption. Companies have acquired all the gas under the McAllen General Area and have a right under the contract, to produce it all and the correlative obligation to pay the tax on all that it produces. That City is the purchaser of some of the gas produced, in no manner alters this obligation.

It is important to note how City is to pay for the gas and the amount. It is observed that the contract says:

". . ., the total price to be paid by City to Companies for all gas sold and delivered hereunder shall be the aggregate of (1) an amount of money equal to all Lessor's and landowner's royalty payable by Companies on the quantity of gas so sold and delivered hereunder, and (2) an amount of money equal to all production, severance, sales, gathering, transmission and other taxes of similar nature, levied and assessed in respect of or applicable to the quantity of gas so sold and delivered hereunder."

This is nothing more than a measurement in money of what City receives from Companies for the privilege of producing and selling all the gas which Companies may sell not only to City but to others under long term contracts, if desired, so long as it observes the requirements of the amount of gas to be sold and delivered to City from the total of all gas produced from the McAllen General Area.

It is apparent to us in construing the lease and gas sales contract together and as one instrument that the right to purchase gas by City is in lieu of the right to receive a royalty as prescribed in the lease.

This tax has been properly laid against Companies, the producers. After the delivery of the gas to City, it may use it or sell it to others but the tax liability of Companies as producers remains the same.

You are therefore respectfully advised that Companies are liable for the tax as the producers of the gas sold and delivered to City under the contract.

SUMMARY

A producer of gas, which is sold and delivered
to a City, a municipal corporation, under a
contract with the City, is liable for the occu-
pation tax imposed by Article 7047b, V. C. S.
That a City is the purchaser of the gas, is
wholly immaterial. The tax liability against
the producer is the same under the contract here
involved and under the statute. The City is not
the producer; hence, it is not liable for the tax.
But Companies are the producers and are, therefore,
liable for the tax. City is neither a royalty
owner under the contract or the statute.

Yours very truly,

WILL WILSON
Attorney General

By L. P. Lollar
L. P. Lollar
Assistant

LPL:gs

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman

C. K. Richards

Ed. Horner

Ralph Rash

John Minton

REVIEWED FOR THE ATTORNEY GENERAL
BY:

Geo. P. Blackburn